UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

———————————————

UNITED STATES OF AMERICA,

              v.

QUAWEE JONES, et al,

              Defendant.

16 Cr. 181 (JLL)

———————————————


DEFENDANT QUAWEE JONES' MEMORANDUM OF LAW
IN SUPPORT OF HIS MOTION FOR A *DAUBERT* HEARING TO EXCLUDE AND/OR
LIMIT THE EXPERT TESTIMONY OF SERGEANT MICHAEL PEREZ


## PRELIMINARY STATEMENT

Defendant Quawee Jones respectfully submits this Memorandum of Law in support of his motion to exclude the testimony of Sergeant Michael Perez absent proof by the government that his testimony meets the requirements of Fed. R. Evid. 702. The government seeks to admit the testimony of Sergeant Perez as an expert in the field of controlled substances, and in particular, his expertise related to the use of coded language in narcotics conspiracies and transactions. Per its disclosure, the government seeks to use Sergeant Perez to interpret the meaning of some of the terms used in these coded conversations and discuss the roles and responsibilities of different members of a drug trafficking group, as well as the practices, habits and techniques of drug traffickers. This expertise will also relate to the identification, transportation, pricing, packaging, concealment, marketing, possession, use and distribution of heroin.

The Court should conduct a *Daubert* hearing to determine if this testimony is admissible under Fed. R. Evid. 702, in that Sergeant Perez must be qualified to testify regarding the proposed subjects, his opinion must be reliable, and it may not impermissibly relay hearsay statements to

the jury under the guise of an expert opinion.   If the Court admits the expert testimony of Sergeant

Perez, Jones seeks to limit that testimony to the meaning of coded words, while prohibiting

testimony that Jones has played a certain role in, or has certain knowledge about, a conspiracy or

other offense.   Sergeant Perez should also be prohibited from providing interpretations of clear

conversations that need no interpretation and are thus not helpful to the jury under Fed. R. Evid.

702.  Jones also joins in the motions *in limine* filed by his co-defendants, to the extent that they do

not conflict with his own motions.

<u>ARGUMENT</u>

<u>POINT I</u>
**THE COURT SHOULD CONDUCT A DAUBERT HEARING TO
DETERMINE THE ADMISSIBILITY OF SERGEANT PEREZ'S
EXPERT TESTIMONY.**

**A.      The Government Must Establish the Qualifications and Reliability of Sergeant
Perez's Expert Testimony Relive to the Alleged Drug Conspiracy at 25 Johnson.**

Rule 702 of the Federal Rules of Evidence governs the admissibility of testimony by an

expert witness.  Pursuant to Rule 702, a witness who qualifies as an expert, may provide testimony

if the expert's scientific, technical, or specialized knowledge will assist the trier of fact and "the

testimony is based on sufficient facts or data . . .; [and] is the product of reliable principles and

methods . . .; and the expert has reliably applied the principles and methods to the facts of the

case." *Id.*  The Third Circuit has found "that Rule 702 embodies a trilogy of restrictions on expert

testimony: qualification, reliability[,] and fit." *Schneider ex rel. Estate of Schneider v. Fried,* 320

F.3d 396, 404 (3d Cir. 2003) (citation omitted).   The qualification requirement is interpreted

broadly and means that the witness possesses a specialized expertise. *Id.*  To be reliable, "the

expert's opinion must be based on the 'methods and procedures of science' rather than on

'subjective belief or unsupported speculation'; [and] the expert must have 'good grounds' for his

2

or her belief." *In re Paoli R.R. Yard PCB Litig.,* 35 F.3d 717, 742 (3d Cir. 1994) (quoting *Daubert v. Merrell Dow Pharms.,* 509 U.S. 579, 589 (1993)).  Finally, the expert's opinion must "fit the issues in the case" and help the trier of fact.  *Schneider,* 320 F.3d at 404.  "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."  *Daubert,* 509 U.S. at 591-92.  The district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability, and fit from reaching the jury.  *Schneider,* 320 F.3d at 404.  The party offering the expert testimony bears the burden of establishing the existence of each factor by a preponderance of the evidence.  *See In re TMI Litig.,* 193 F.3d 613, 663 (3d Cir. 1999), *amended by* 199 F.3d 158 (3d Cir. 2000).

Here, Sergeant Perez's testimony is being offered to decode drug related conversations and discuss the roles and responsibilities of different members of a drug trafficking group, as well as the practices, habits and techniques of drug traffickers.  The government has failed to provide the specialized expertise and basis for his knowledge that qualifies Sergeant Perez to testify regarding decoding of drug terminology relative to the alleged drug conspiracy at 25 Johnson.  The government has also failed to establish Sergeant Perez's qualifications and reliability relating to his proposed testimony regarding the roles in the drug hierarchy at 25 Johnson, the roles and responsibilities of different members of this alleged drug trafficking group, as well as the practices, habits and techniques of the these specific drug traffickers as alleged in the indictment.  The alleged operation at 25 Johnson is limited to a discreet location and defendants were not members of a larger or more well-known drug operation or gang, such as the Bloods or Crips.  Absent such proof of Sergeant Perez's basis of knowledge relative to 25 Johnson, his testimony should be excluded.

**B.     The Court Must Conduct a *Daubert* Hearing to Determine if the Factual Bases of Sergeant Perez's Expert Testimony is Grounded in Hearsay.**

When an expert's testimony is not based on personal knowledge but on testimonial hearsay, the danger arises that the expert testimony violates the Confrontation Clause.   The Sixth Amendment's Confrontation Clause guarantees the right of the accused "to be confronted with the witnesses against him." U.S. Const. Amend. VI. It bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53–54, 124 S. Ct. 1354, 158 L.Ed.2d 177 (2004).   Introduction of opinion testimony does not violate the Confrontation Clause when the experts rely on their independent judgment – even when this independent judgment is based on inadmissible evidence. *United States v. Johnson,* 587 F.3d 625, 634-35 (4th Cir.2009).  But if the expert is simply "parrot[ing] 'out-of-court testimonial statements of cooperating witnesses and confidential informants directly to the jury in the guise of expert opinion,'" the testimony would be inadmissible as it would provide an end run around *Crawford.*" *Id.* at 635 (quoting *United States v. Lombardozzi,* 491 F.3d 61, 72 (2d Cir. 2007)).

The extent to which an expert witness may disclose to a jury an otherwise inadmissible out-of-court statement without implicating a defendant's confrontation rights is a question of degree. *Johnson,* 587 F.3d at 635.  "If an expert simply parrots another individual's out-of-court statement, rather than conveying an independent judgment that only incidentally discloses the statement to assist the jury in evaluating the expert's opinion, then the expert is, in effect, disclosing that out-of-court statement for its substantive truth; the expert thereby becomes little more than a backdoor conduit for an otherwise inadmissible statement." *United States v. Pablo*, 696 F. 3d 1280, 1288 (10th Cir. 2012); *see also United States v. Lombardozzi,* 491 F.3d 61, 72 (2d

Cir.2007) (explaining that because an expert witness may "form an opinion by applying her expertise to otherwise inadmissible evidence" including out-of-court statements, and convey that information to the jury for purposes of evaluating the expert's opinion, the admission of the out-of-court statement deprives a defendant of his confrontation rights only if the expert conveys the statement "directly to the jury in the guise of an expert opinion").  Moreover, when case agents testify as experts, they gain "unmerited credibility when testifying about factual matters from first-hand knowledge."  *United States v. Dukagjini,* 326 F.3d 45, 53 (2d Cir.2003); *United States v. Mejia*, 545 F.3d 179, 196 (2d Cir. 2008) (those parts of expert testimony that involved purely factual matters, as well as those in which expert simply summarized the results of the Task Force investigation, fell far beyond the proper bounds of expert testimony; expert was acting as a de facto "case agent" in providing this summary information to the jury).

As such, a *Daubert* hearing must be held to determine the admissibility of Sergeant Perez's proposed expert testimony.

<u>POINT II</u>
**SERGEANT PEREZ'S TESTIMONY SHOULD BE LIMITED TO THE MEANING OF CODED DRUG LANGUAGE AND SHOULD NOT EXTEND TO AREAS THAT NEED NO AID OR ILLUMINATION.**

Under Fed. R. Evid. 702, government agents may testify to the meaning of coded drug language, as drug traffickers' jargon is a specialized body of knowledge and thus an appropriate subject for expert testimony.  *United States v. Gibbs*, 190 F.3d 188, 211 (3d Cir. 1999).  "Such testimony is relatively uncontroversial when it permits a government agent to explain the actual meanings of coded words — that is, when the agent acts as a translator of sorts. *Id*. (citing *United States v. Griffith,* 118 F.3d 318, 322 (5th Cir. 1997) (agent testified that "days of work" meant pounds of marijuana); *United States v. Delpit*, 94 F.3d 1134, 1444 (8th Cir. 1996) (agent testified that "straps" meant guns); *United States v. Simmons,* 923 F.2d 934, 946 (2d Cir.1991) ("boyfriend"

or "boy" meant heroin)).  It is a different matter when an agent testifies that, in light of the meanings he has attributed to certain conversations, a defendant has played a certain role in, or has certain knowledge about, a conspiracy or other offense.  *Gibbs*, 190 F.3d at 212 (citing *United States v. Boissoneault,* 926 F.2d 230, 233 (2d Cir. 1991) (expressing discomfort with expert testimony that draws conclusions as to the significance of conduct or evidence)).

There are two distinct ways in which an officer expert might "stray from the scope of his expertise."  *United States v. Dukagjini,* 326 F.3d 45, 55 (2d Cir.2003).  The expert might "interpret[] ambiguous slang terms" based on knowledge gained through involvement in the case, rather than by reference to the "fixed meaning" of those terms "either within the narcotics world or within this particular conspiracy."  *Id*.  Or, the expert might "testif[y] about the meaning of conversations in general, beyond the interpretation of code words."  *Id.; see also United States v. Freeman,* 488 F.3d 1217, 1227 (9th Cir.2007) ("The fact that [the officer expert] possessed specialized knowledge of the particular language of drug traffickers did not give him carte blanche to testify as to the meaning of other words in recorded telephone calls without regard to reliability or relevance.").  Sergeant Perez's testimony should not extend into "areas in which the jury needs no aid or illumination."  *Id*. at 212-213.

Pursuant to Fed. R. Evid. 702, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge *will help the trier of fact to understand the evidence or to determine a fact in issue*."  *Id*. (emphasis added).  "Although courts have construed the helpfulness requirement of Fed. R. Evid. 701 and 702 to allow the interpretation by a witness of coded or 'code-like' conversations, they have held that the interpretation of clear conversations is not helpful to the jury, and thus is not admissible under either rule."  *United States*

*v. Dicker,* 853 F.2d 1103, 1108-09 (3d Cir. 1988); *see also* Fed. R. Evid. 702 advisory committee notes (stating that whether the situation is a proper one for expert testimony "is to be determined on the basis of assisting the trier"); *United States v. Stevens,* 935 F.2d 1380, 1384 (3d Cir.1991) ("[W]e agree with the district court's exclusion of Stevens's expert testimony on two of the three disputed points in that such testimony would not have been 'helpful' – the touchstone of Fed. R. Evid. 702 – to the jury."); *Scott v. Sears, Roebuck & Co.,* 789 F.2d 1052, 1055 (4th Cir.1986) (noting that Rule 702 makes inadmissible expert testimony as to a matter that obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance; but noting that the admission of such testimony, though technical error, will almost invariably be harmless).

In *United States v. Gibbs*, the Third Circuit concluded that the district court abused its discretion in failing to exclude expert testimony explaining what "tonight's the night," "we're going to be on that tonight," and "got to do it tonight" meant in the context of a drug conspiracy case. The Court held that it was the function of the jury, which heard all of the relevant tape recordings, to determine what these phrases meant in the context of the surrounding sentences.  The expert's testimony was not helpful to the jury, and the court determined that the only purpose of that testimony was to bolster the government's allegations that the defendant was an enforcer. Similarly, here, the government should not be permitted to use Sergeant Perez's testimony to bolster its allegations against Jones by interpreting phrases and conversations that the jury needs no assistance in understanding.  Sergeant Perez's testimony should be limited to an explanation of coded words.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendant Quawee Jones respectfully requests that the Court exclude the expert testimony of Sergeant Michael Perez, absent proof by the government that the testimony meets the requirements of Fed. R. Evid. 702, including whether it impermissibly includes hearsay statements.  If the Court admits Sergeant Perez's testimony, Jones requests that it be limited to an explanation of coded words, while prohibiting testimony that Jones has played a certain role in, or has certain knowledge about, a conspiracy or other offense.  Sergeant Perez should also be prohibited from providing interpretations of clear conversations that need no interpretation and are thus not helpful to the jury under Fed. R. Evid. 702.

Jones also relies on his previous motion *in limine* to preclude evidence of his prior convictions, filed on September 11, 2017 (Dkt. No. 262), and also seeks leave to join in the *in limine* motions filed by his co-defendants.  Jones reserves the right to raise any additional motions should the need arise.

BIANCAMANO LAW, LLC
Attorneys for Defendant Quawee Jones

Dated: October 6, 2017               By:     s/ Stacy A. Biancamano_____
                                             Stacy A. Biancamano, Esq.

8